May it please the Court, Counsel. My name is Steve August. I represent Kathleen Yanz, the plaintiff appellant in this case. I'd like to reserve two minutes, if I may, for rebuttal. Counsel, one of the elements of the prima facie case is that she has to have been performing her job satisfactorily. I had trouble seeing where you established that element, because it looked as though she had a whole lot of bad ratings at her job. She had one that was satisfactory, but barely, and it didn't indicate a trend, because she got unsatisfactory ratings after that. How does the evidence establish that element to the prima facie case? Your Honor, the district court found that... Wait a minute. The district court didn't – wasn't it summary judgment? It was summary judgment. We have a case that holds there's no such thing as a finding on summary judgment. What evidence is in the record, Counsel? I appreciate it. And also, we reviewed De Novo. We can't defer to what the district court thought was not a genuine issue of material fact. So just address the question directly. What is there to show? The showing was that at the time of the termination, the preceding reevaluation, which occurred in May of 1999, some six months before the actual termination, she did have a satisfactory evaluation. That's what I referred to. Right. She had unsatisfactory, unsatisfactory, got up to satisfactory, though not superior or excellent or anything, and then right back down. And then right back down, and then the ultimate, that her employment went south immediately there with the last evaluation. Yes? So what is the prima facie case for she was performing her job satisfactorily? Well, we believe that her 11 1⁄2 years of experience there, that, again, while there was some unsatisfactory evaluations prior to it, she was maintaining back in May of 1999 again, she did bring that back up to satisfactory. And then again, as you mentioned later, just before and actually concomitant with the termination itself, she was hit again with an unsatisfactory recommendation or evaluation. If she had had 11 or 12 years of being an assistant manager and getting good evaluations, then I could see that argument, but I don't in the context of the particular case. Maybe you could expand on it. And maybe not all of this is before you, and out of fairness to counsel, I just want to preface my statements with that. She was hired as an hourly back in 88. She became an assistant SOAR manager in September of 90, had about seven years of SOAR. October of 97 is when Ken Peterson, who in this case she believes was the source of her problems and the beginning of her sort of slide backwards in terms of her evaluations, he started in October of 97. And over that time between October of 97 to January of 2000, that's when the sort of lower evaluations came into play. And it goes back to what my client believes was Mr. Peterson's ill will toward her that these statements were starting to be made, the statements of, I can replace you with two younger, less experienced employees. Maybe, and when she complained, she was told that maybe she ought to change her ways. Maybe she ought to go up to another store. You argue that that's age, that comment. Yes. I believe the district judge thought it could just as well be a reference to money. And because she was drawing a high rate, she could be replaced with less expensive people. After all, they hired people who were close to her in age to replace her. I believe the people that they hired, or actually the person they brought in was an Eric Holmes, and he was much younger than 40, not a member of the protected class. So why was she terminated? Was it for violating the open-door policy? They stated that she was terminated for violating the open-door policy. We also have issue with that. We have issue with that. Is there in the record to dispute that assertion? In the record, you can look to the statement of Robert Holmes, who's actually the brother of Eric Holmes, who was the assistant manager that came in. Robert Holmes was in on the coaching. He witnessed the coaching. In his written statement, he doesn't mention anywhere in there that Cathy Yance threatened reprisal if the hourly employee utilized the open door. Nowhere in there does she do that. Basically, she has issue with the alleged violation of the open door. She told the hourly employee that, you can go ahead and use the open door, but they're basically going to shove it back to me. And this is based on her experience. It's a way to discourage somebody from going over her head. The open-door policy means you can go over your boss's head, isn't it? That's right. Is that right? That's right. Well, if the boss says, you can try it if you want, but it's just going to come right back to me, isn't that telling somebody, waste of time, don't bother? Well, I think it could be construed that way, and that argument's there. I grant that. However, but it's not an explicit, don't go above me, I'm threatening you with the termination of your job if you do. Those are two, I think, different qualities of communications. I think what she was trying to do was speak to her in pragmatic terms of, you know, they're going to bring it right back to me anyway, and besides, this problem's between you and I, let's hash this out here and now and get this taken care of. And I think her communications to the hourly employee were in that vein. And if I may, this case really is an age case. There are allegations of gender discrimination, and that stems largely from the fact that a younger male was hired to become the assistant store manager. But this case, the strength of this case is the age claim. The strength of this case is the fact that there's direct evidence that Ken Peterson, the store manager, or co-manager, made these statements that you can be replaced, Ms. Yance, by two younger, less qualified employees. And that's, in fact, what happened. Ken Peterson was a decision-maker. Roberts. Incidentally, the reference, I think, maybe I could be confused on this, but I think the reference there wasn't to her deposition testimony. It was to her charge of discrimination. Is that right? That's right. But that was filed as a declaration to be considered? Yes, it was. And it was something that she would testify to if this case were brought to the jury. The question is whether she did for Rule 56C purposes. Your Honor, I believe, and I don't think I made it part of the record, I believe she did in her deposition at some point. Do you know the page? No, I don't. Let me tell you why I'm concerned about it. Less experienced employees, well, Walmart hires all these old people. You can have somebody 70 years old, and they're a brand new, low-paid employee. And so I don't know if less experienced and younger means the same thing. And I want to know if when she was questioned about it at her deposition, she quoted the remark the same way. I don't recall that she was questioned in that context that way. I don't believe she was. Sorry, go ahead. If I may reserve my time. Thank you. Good morning, Your Honors. Counsel, may it please the Court. Ernest Calderon on behalf of Walmart, the appellee. This is a case of a supervisor barring the door for a remedy that the subordinate would like to have. The subordinate said, may I use, I want to use the open door policy. Because of the supervisor's own experience or bad experience in using the open door policy,  it's going to wind up back here at me. A specific attempt to dissuade the employee from utilizing her rights to grieve. This is the last straw in a series of employment-related problems. In 1998, the appellant was warned that the next discipline that she might face would be termination. In 1999, the next incident, she was disciplined again. They said, next time you might be terminated. In 1999, a third time, or second time in 1999, third time in the litany here, they said, next time you have an employment problem, you may be terminated. On the fourth strike, when she barred the door for the remedy, then she was terminated. Not three strikes and you're out, but four strikes and you're out. The appellant attempts to persuade the Court that there is direct evidence of discrimination because of a stray comment that is described. This direct evidence, you refer to that all the time in your brief about direct evidence. As you pointed out later in your brief, circumstantial evidence is also sufficient if it's specific and substantial. So, but constantly you're saying there's no direct evidence. There's no direct evidence. Every time I read that, so what? Your Honor, for the record, there's no direct evidence, nor is there substantial  As long as you couple it, I'm happy. And yes, Your Honor, and I think that's an excellent point. When Tom Hughes was accused of violating the open-door policy, he only got a reprimand. Did he have a distinct, a different background record? Your Honor, I don't know, but that's the appellant's duty to persuade this Court that they were similarly situated. If you look at the record, the record is void of any of any showing that there were two things on point. I would venture to guess that he did not have three warnings that he would be terminated next time. All you can say is there's no evidence. There is no evidence, Your Honor. Thank you. Just as the Court originally noted on the EEOC, the EEOC charges, the only part of the record we talk about is stray comment. We talk about the comment about replacing the age. I would respectfully direct this Court to review the NIDS analysis, the NIDS case. And in NIDS, there was a, that this Court has adopted in NIDS, that was a situation where they, it could be found at 113 Federal Reporter 3rd, 912, where there was a comment, they referenced the Nesbitt case in NIDS, where it says, we don't necessarily like gray hair. Very comparable to this EEOC, this bare assertion the EEOC claimed the appellant has filed. And the Ninth Circuit in that case said, that's an unattenuated stray comment that is, that has no proximate cause to the termination. It's the appellant's duty to show that there is a proximate direct cause from some stray comment to the decision. You compare and contrast that with this Court's findings in Cordova and in, in Godwin. And in that case, those cases, this Court has determined that there is a direct causal effect to the employment. This Court found that the reference to a Hispanic insurance agent by being called a dumb Mexican was a direct causal, had a direct causal effect to the employment. In Godwin, it was hiring another female employee, and the statement was, the supervisor didn't want to deal with another female. In that case, the Court said, yes, the appellant has succeeded in showing a direct causal relationship. In this case, all we have is a bare assertion in an EEOC charge that is filed. The, the appellee relies on the employment decision that was made. I think the Court was, was, hit the salient point when it talked about the age of the people that were hired. And I think one thing you need to, that Walmart hires, but one thing you need to also remember, that the person that was hired was one of 15 assistant managers. Walmart doesn't concede that the person that was hired, the male that, that, that appellant refers to, is her replacement. He's just another one of 15, 15 assistant managers in a particular store. I missed that. Is there evidence one way or another on whether he's a replacement? There's evidence that he was hired. There is no evidence that he was hired specifically as her replacement. Is there evidence that he wasn't? No. There's no evidence that he wasn't. But, Your Honor, the appellee need not provide evidence that he wasn't. It's the appellant. Is there evidence showing his training and promotion prior to the time of the employment incident? Yes. There is evidence that he had, he had trained at a, a super center store in, I think, Gallup, New Mexico. And he was ready for promotion. And there was an opening in Sholo, Arizona. And the geographic proximity merited him going there. There was a mis, a misstatement that was made. Counsel didn't intend to, to, to say that. But I think you heard earlier that, that the stray comment was that we can replace you with two less talented or less able. And less experienced might be correct, but not less able. Inexperienced younger people. Inexperienced, that's correct. But I think what the, what was, what was said here earlier is two unqual, two unqualified people. And that's not, that's not the case. That's not the case. I'll recall it that way. Great. Thank you, Your Honor. Is there any place I should be looking for this comment other than the 49 of the excerpts? That's it, Your Honor. That's the charge of discrimination? Yes. Yes. So there never was any cross-examination to find out exactly what she remembers them saying? We don't even know when this was alleged, allegedly said. I can't point to, say, a deposition page. No. We can't say when it was said, where it was said, what the context of it was said. I'm asking about what was said, actually. Just in her EEOC chart. That's the only evidence I have. Yes, Your Honor. Yes, Your Honor. Your Honor, the appellant was fired for two simple reasons. The reasons being, she violated the open door policy. Secondly, her performance was less than reasonably expected from her. I respectfully suggest that a person can have a long career that's distinguished. But if they have other problems that come up at the end of a career or are troubled during some years, the length of service doesn't exonerate them from having to live up to the standards of adequate performance. In this case, she barred the door. The only remedy that the employee had, she barred the door to the point that the employee was distraught. That is a serious employment problem. And when it is the fourth strike, it was satisfactory enough for the appellee to terminate the employee. We rely on the cases cited in our brief, particularly Bradley v. Harcourt. In that case, you will find the standard for proving a specific and substantial evidence of pretext. And you will note when you look at that case compared to this case, we're talking apples and oranges. There is no substantial proof of pretext. No substantial. Mr. Kelly, before you get to pretext, you have the prima facie case. Is it your position on behalf of Walmart that she did make a prima facie case that she was performing satisfactorily so that you reach the question of pretext? No. No, Your Honor. We're not agreeing to that. But if the Court is for some reason persuaded that the bare statement in the EEOC charge and her past performance up to the four disciplinary matters is enough to move her on, she still doesn't meet the substantial circumstantial evidence test. She still doesn't meet Harcourt. She still doesn't meet the test in NIDS. And when you compare Godwin to the case, when you compare Godwin to the pretext now, and I was asking about prima facie case, one of the elements of prima facie case is that she was performing her job satisfactorily. She was not, Your Honor. Are you conceding that she was, is my question. No, Your Honor. We're not conceding that. She was not performing satisfactorily. And the record is explicit with that. Your Honor, thank you very much. We rest on our brief. Thank you, counsel. In response, I'd like to say that Ms. Yance was, by Walmart standards, performing her job satisfactorily at the time of the termination. She was not notified of the reason for the termination being because of poor performance at the time of the firing. Walmart fired her because of this alleged open door policy violation. The court, Walmart, is able to bring in new, different justifications afterward. But those are issues that ought to go before the jury and ought to be determined by the jury. As to the Cordova case and the Godwin case, the Cordova case, again, was the insurance agent that was referred to as a dumb Mexican. And the Godwin case, where a supervisor said he doesn't want to work with another woman, I suggest to this Court that this case falls somewhere in between. It's not as bad or egregious as the dumb Mexican comment, but it certainly is at least as bad as I can't work with another woman comment. When an employee is told by her supervisor that she can be replaced by younger, less the age act is written to prohibit. And I am out of time. Thank you. Yance versus Peterson is submitted. Next is McVeigh versus City of Reno. I think we're down to standing. Oh, thanks. Next, we'll hear Dyson versus.
judges: Goodwin, Kleinfeld,jones